## DECLARATION IN SUPPORT OF VERIFIED COMPLAINT

Under 28 U.S.C. § 1746, I, Lawrence Andrew Correll, Special Agent of the Federal Bureau of Investigation ("FBI"), make the following unsworn declaration, under the penalty of perjury, in support of the Verified Complaint to which this declaration is attached:

### INTRODUCTION

1. This declaration is made in support of a Verified Civil Complaint for property constituting fraud proceeds, as determined by an FBI investigation. The Defendant Property is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and (D), on the grounds that it represents property which constitutes or is derived, directly or indirectly, from proceeds traceable to 18 U.S.C. §§ 1001(a)(2) (false statements regarding bank fraud), 1014 (false statements on loan applications), and 1344 (bank fraud). This declaration is based upon my personal knowledge and experience obtained as case agent in the above case and information I have received from other law enforcement.

2, Because this declaration is being submitted for the limited purpose of establishing my reasonable belief that the United States can demonstrate, by a preponderance of evidence, that the Defendant Property is the proceeds of the above-referenced criminal activity, I have I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to meet the United States's burden of proof that the the seized funds are subject to forfeiture through this civil case.

### DECLARANT'S BACKGROUND AND EXPERIENCE

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so since June 26, 2016. I attended and graduated from the FBI Academy in Quantico, Virginia where I received training in criminal investigations and federal criminal laws. Upon completion of



**EXHIBIT A**

training at the FBI Academy, I was assigned to the New Orleans Field Office where I investigated public corruption and government fraud. I am currently assigned to the Jackson Field Office where I investigate public corruption. As a Special Agent, I have received training and gained experience in the investigation of violations enforced by the FBI and enumerated in Titles 18, 21, and 42 of the United States Code. I have a bachelor's degree in Economics from the University of North Carolina at Charlotte, and a Juris Doctorate from the University of Mississippi School of Law.

## ITEMS TO BE FORFEITED TO THE UNITED STATES OF AMERICA

5. The property sought for forfeiture through these forfeiture proceedings includes the following asset (hereafter, the "Defendant Property[1]") seized from Cerissa Renfroe Neal ("Neal"):

| ASSET ID | Property Description |
|---|---|
| 22-FBI-001878 | $9,421.79 U.S. Currency from Trustmark National Bank Account 100-274-8507 held in the name of Cerissa Renfroe Neal |

## BACKGROUND AND CONTEXT

6. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act—a $2.2 trillion economic stimulus bill signed into law on March 27, 2020—was designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effect caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The PPP is implemented by the Small Business Administration with support from the Department of the Treasury. In or about April 2020, Congress authorized more than $300 billion in additional PPP funding.

---

[1] The United States obtained a seizure warrant for the seizure of $15,000.00 from this account, but at the time of seizure, on February 24, 2022, the account only held $9,421.79.

**EXHIBIT A**

7. The Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides supports to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

8. To obtain a PPP loan, a qualifying small business must submit a PPP loan application, which is signed by an authorized representative of the business, to a participating lender. The PPP loan application requires the small business applicant (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible for the PPP loan. In the PPP loan application, the small business applicant (through its authorized representative) must state, among other things, (a) its average monthly payroll expenses; and (b) the number of its employees. These figures are used to calculate the loan amount the small business is eligible to receive under the PPP. In addition, the small business applicant must provide supporting documentation showing its payroll expenses.

9. A small business's PPP application is initially submitted to, and processed by, a participating lender, then transmitted for further review to the Small Business Administration ("SBA") to assess the applicant's eligibility. If the PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course

**EXHIBIT A**

of processing the loan.

10. Under the terms of the PPP program, PPP loan proceeds must be used by the small business applicant for specified permissible expenses, namely, payroll expenses, mortgage interest payments, rent payments, and utilities expenses. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the small business applicant spends the loan proceeds on the specified expenses within a particular period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

11. When submitting an SBA PPP application, the small business applicant is explicitly warned, and must acknowledge, that making a false statement in the application, and/or submitting false or fraudulent supporting documentation, is a violation of federal law.

12. In addition to the PPP loans, the CARES Act was also used to assist with unemployment benefits, EIDL disaster loans, tax relief programs and numerous other government relief programs. One such program created to assist with the pandemic was the American Rescue Plan, signed into law on March 11, 2021. Under this plan, employers are entitled to tax credits or reimbursements for providing paid leave to employees who take time off due to COVID-19. Eligible employers can report their information on Form 941, Employers Federal Tax Return. Criminals have exploited the American Rescue Plan for their own personal gain and file for these benefits fraudulently by either inflating their losses or filing for non-existent businesses.

13. The United States has received reports of numerous fraudulent schemes exploiting the COVID-19 crisis to commit large-scale fraud against federal and state government programs meant to assist citizens endure the crisis. The estimated loss from fraud with PPP loans is currently more than $80 billion dollars alone. The United States estimates the loss of funds from

**EXHIBIT A**

all programs including the American Rescue Plan is well over $100 billion dollars.

14. The Families First Coronavirus Response Act, COVID-related Tax Relief Act of 2020, Coronavirus Aid, Relief, Taxpayer Certainty and Disaster Tax Relief Act of 2020 and Economic Security Act and American Rescue Plan Act of 2021 provided refundable tax credits for employers, collectively referred to hereafter as "COVID-19 credits." The COVID-19 credits were a response to the Emergency Paid Sick Leave Act that required certain employers to provide paid leave to employees unable to work or telework because of COVID-19. The COVID-19 credits are reserved for only those employers who paid qualified sick and family leave to employees for leave taken in after March 1, 2020, and before October 1, 2021. An employer calculates the credits on a worksheet that is included with the filing instructions for Form 941. The credits are available to claim on Forms 941 beginning the 2nd quarter of 2020 and are to be calculated based on qualified wages paid during the quarter for which the Form 941[2] is filed. The amount that the credit exceeds the applicable employment taxes is treated as an overpayment and refunded to the employer.

15. Criminals applied for PPP loans and fraudulently obtained other relief funds by creating companies that did not exist or inflating their number of employees in businesses that did exist. These fraudsters often applied for multiple loans using numerous fake businesses they created. As described above, the applications for these loans clearly define how the money received must be used and also warn of the penalties associated with the inappropriate use of the funds and/or falsifying applications.

16. In an effort to get the funds dispersed quickly, banks and other financial institutions were advised they would be held harmless for borrowers' failure to comply with

---

[2] These worksheets are not required to be submitted to the IRS with the corresponding Form 941 and have not been obtained from Neal.

5

**EXHIBIT A**

program criteria. The speed at which the funds were distributed weakened the verification process for loans.

17. The basic scheme was very simple. Fraudsters went on state websites and took the names of existing businesses or created new fraudulent ones.

18. The state websites do not require validation or any information to prove a business is legitimate. A person could create a fraudulent company and then apply for a PPP loan stating they have 50 employees with a payroll of $10 million dollars per year.

19. The PPP loan program ended when the funds ran out and many legitimate businesses with employees did not get funded. Numerous businesses had to close, and employees lost their jobs due to not being funded. Criminals stole money that may have saved a small business and prevented individuals from losing their jobs.

20. PPP loans have specific rules for what the funds can be used for when a loan is obtained. The rules state that at least 60% of the loan must go towards payroll with the remaining going to other specific costs relating to the company.

21. Criminals who fraudulently obtain PPP loans often spend the funds on vehicles, luxury items, entertainment, personal expenses, vacations or to further another criminal venture.

22. Criminals that obtain PPP loans fraudulently often exploit other government programs meant to assist citizens in times of crisis such as the COVID-19 pandemic. Examples of other fraudulent activity are receiving unemployment benefits fraudulently and filing false tax returns to receive money from government programs created to assist with the crisis.

23. Regardless of the various methods listed above, more than $100 billion has been stolen from the COVID-19 relief programs set up to assist businesses and individuals who lost their jobs due to the pandemic. Throughout the COVID-19 pandemic, criminals have exploited

**EXHIBIT A**

the American people for their own illicit gain.

## FACTS AND CIRCUMSTANCES

24. Neal is a citizen of the United States and resides in Madison, Mississippi. She is the sole owner of a business entity known as Garland Consulting Services LLC. Neal, through Garland Consulting Services LLC, applied for (and ultimately obtained) a PPP loan in March 2020 for $18,125. She obtained a second PPP loan on January 19, 2021, through Trustmark Bank for $15,000.

25. On the SBA 2483-SD application form that Neal signed, box 4 contains the following language: "Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant presently incarcerated or, for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction?" Neal checked "no" next to this box. An SBA representative confirmed that Neal would have been deemed ineligible for the loan had she checked "yes" next to box 4.

26. On August 19, 2020, Neal had been arrested based on an indictment for twelve felony counts related to a conspiracy to commit bribery and was personally present for her arraignment in federal court. Neal therefore would have been fully aware that she was subject to formal criminal charges at the time she submitted the SBA 2483-SD on January 19, 2021, for the second PPP loan.

27. Trustmark Bank, in Jackson, Mississippi, where Neal has an account, processed Neal's PPP loan application. Loan proceeds totaling $15,000 were directly deposited into an account controlled by Neal (account number 100-274-8507) on March 9, 2021.

28. The FBI initiated an investigation of Neal and Garland Consulting Services LLC


**EXHIBIT A**

in July 2021 after it received a tip from the SBA that Neal had committed fraud in applying for a loan through the SBA-administered PPP.

29. On August 10, 2021, a federal grand jury returned an Indictment against Neal, charging her with one count of making false statements in a loan application, in violation of 18 U.S.C. § 1014, one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of making false statements, in violation of 18 U.S.C. § 1001(a)(2). *See United States v. Cerissa Renfroe Neal*, 3:21-cr-85-TSL-FKB, Indictment, ECF No. 3.

30. Based on records provided by Trustmark, on July 14, 2021, Neal's account contained $27,857.03; however, when the funds were seized via the seizure warrant on February 24, 2022, the account only held $9,421.79. To date, no part of this PPP loan has been repaid.

31. On September 26, 2023, a jury found Neal not guilty of all four counts in the Indictment. *See Neal,* Verdict Form, ECF No. 65. Nevertheless, there is sufficient evidence to establish, by a preponderance of the evidence, that the Defendant Property constitutes the proceeds of the criminal activity stated above.

## CONCLUSION

33. Based upon the facts set forth herein, I believe that the Defendant Property is subject to forfeiture as proceeds traceable to making false statements in a loan application, bank fraud, and making false statements, and therefore is subject to seizure and civil forfeiture pursuant to 18 U.S.C. ' 981(a)(1)(C).

34. Any allegedly legitimate funds in the account are also subject to forfeiture, up to the amount of the proceeds, as fungible assets pursuant to 18 U.S.C. § 984 as proceeds of specified unlawful activities occurring in the past 12 months. Section 984 provides

> (a)(1) [i]n any forfeiture action in rem in which the subject is cash, monetary instruments in bearer form, funds deposited in an account in a

**EXHIBIT A**

financial institution (as defined in section 20 of this title), or precious metals

>  (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>  (B) it shall not be a defense that the property involved in such offense has been removed and replaced by such property.
>
>  (2)   Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.
>
>  (b)   No action to forfeit property directly traceable to the offense under this section may be commence more than 1 year from the date of the offense.

Accordingly, for all proceeds of specified unlawful activities occurring in the past 12 months, the Government need not directly identify the property and can instead seek forfeiture of the bank accounts as fungible assets. The Defendant Property was seized less than 12 months from the date that the fraudulent proceeds were transferred to Neal's account.

35.   I declare, pursuant to 28 U.S.C. § 1746, that the foregoing is true and accurate to the best of my knowledge and belief.

Executed this __5__ day of __November__ 2024.

_____
Lawrence Andrew Correll
Special Agent
Federal Bureau of Investigation

**EXHIBIT A**